**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| THOMAS J. CANNA, individually, and<br>and derivatively on behalf of<br>CANNA & CANNA, LTD.<br><br><br>       Plaintiffs,<br><br>       v.<br><br>JOHN F. CANNA and<br>HAUSER, IZZO, PETRARCA, GLEASON,<br>& STILLMAN, LLC<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 19-cv-5555<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff THOMAS J. CANNA, individually, and derivatively on behalf of CANNA & CANNA, LTD., by and through his undersigned attorneys, complains against Defendants, JOHN F. CANNA pursuant to 18 U.S.C.S. § 1030 *et seq* and Illinois statutory and common law and HAUSER, IZZO, PETRARCA, GLEASON, & STILLMAN, LLC, and alleges and states as follows:

### I.    NATURE OF THE ACTION

1.    Defendant John F. Canna ("John") did absolutely everything one could possibly do wrong when leaving a law firm with the inevitable result being a lawsuit filed against him shortly after he landed at his new firm.

2.    John secretly solicited clients for his new firm before notifying his brother, partner, and co-owner at his old firm that he was leaving, took a corporate opportunity of a merger with another firm for himself, and took many actions to prevent his old firm from competing with his new firm and disabling his old firm from doing business, including but not limited to, hiding or

removing firm files, stealing files, deleting computer files, cutting off access to bank accounts and taking firm money, impairing the ability of his old firm to continue to compete with his new firm by unilaterally cancelling vendor contracts, terminating all non-owner employees, terminating employee health insurance coverage (including the health insurance coverage of the remaining co-owner and his wife), terminating the old firm's 401(k) retirement plan, cancelling the firm's legal research account, disabling the firm's website, and tampering with the old firm's IT system to prevent it from doing business after he left.

3.    John committed all of these egregious breaches of common law and statutory duties to the detriment of his brother and nephew no less.

4.    Plaintiffs state claims against John for violations of the Computer Fraud and Abuse Act, Illinois Corporation Act, and Illinois common law, and other statutory law, and state claims against the firm John joined under Illinois common law.

## II.    **THE PARTIES**

5.    Plaintiff, THOMAS J. CANNA ("Thomas"), is an individual and resident of the County of Will, State of Illinois.

6.    Plaintiff, CANNA & CANNA, LTD. ("C & C") is an Illinois Corporation with its principal place of business in the County of Cook, State of Illinois.

7.    Defendant, JOHN F. CANNA ("John"), is an individual and resident of the County of Cook, State of Illinois.

8.    Defendant, HAUSER, IZZO, PETRARCA, GLEASON, & STILLMAN, LLC ("HIPG&S") is an Illinois Limited Liability Company with its principal place of business in the County of Cook, State of Illinois.

### III. JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and pursuant to 18 U.S.C.S. § 1030 *et seq* and supplemental jurisdiction over the state law claims.

10. This Court has personal jurisdiction over the Defendants because all are domiciled in this District.

11. Venue is proper is this District pursuant to 18 U.S.C.S. § 1030 *et seq*, 29 U.S.C. §1132(e)(2), because (a) some or all of the violations of 18 U.S.C.S. § 1030 *et seq* took place in this District, and/or (b) the Defendants may be found in this District.

12. Venue is also proper in this District pursuant to 28 U.S.C. §1391 because the Defendants systematically and continuously conduct business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### IV. ALLEGATIONS COMMON TO ALL COUNTS

#### A. **The Corporation**

13. C & C is a small law firm incorporated on January 12, 1990. (C & C Bylaws attached hereto as Exhibit "A" and incorporated herein)

14. C & C's office is located at 10703-10705 W. 159th Street, Orland Park, Illinois 60467.

15. At all times relevant hereto and as of the date of this complaint, Thomas and John are each 50% shareholders of C & C and have been the only shareholders since C & C's inception.

16. John has not surrendered his shares of C & C stock, and continues to be an owner of C & C.

17.     John and Thomas are the sole directors of C & C and have continuously been the sole directors of C & C since the date C & C was incorporated.

18.     John has not resigned as a director of C & C, and continues to serve as a director of C & C.

19.     John continuously served as the President and Treasurer of C & C from the date C & C was incorporated until August 2, 2019 at which time he represented (in a letter from his legal counsel), that he was the "former" President and Treasurer of C & C.

20.     John had been referring to himself as President of C & C in letters to C & C employees as recently as August 1, 2019.

21.     Thomas is the Vice-President and Secretary of C & C and has continuously served as an officer of C & C in such capacities since the date C & C was incorporated, and assumed the office of President of C & C pursuant to the Bylaws upon John's resignation as President on August 2, 2019.

22.     John and Thomas are licensed attorneys in the State of Illinois, and are both employed as attorneys for C & C.

23.     Thomas continues to be employed as an attorney with C & C.

24.     John has not resigned as an employee of C & C, and according to his time sheets for the month of July, 2019, he has continued to act as an employee of C & C, billing time for work performed on behalf of the corporation's clients, at least until July 30, 2019.

25.      John was born on March 16, 1952 and is presently 67 years old.

26.     Thomas was born on June 14, 1956 and is presently 63 years old.

27.     John's son, Patrick J. Canna ("Patrick"), and Thomas's son, Michael T. Canna ("Michael") became full-time associates with the Canna and Canna, Ltd, law firm in or around 2012 after they each passed the Illinois Bar Exam and were admitted to practice law in Illinois.

28.     Patrick resigned as an employee of C & C on July 31, 2019.

29.     Michael continues to be employed as an employee of C & C.

**B.  The Rental Property**

30.     The legal owner of the property at 10703-10705 W. 159th Street, Orland Park, Illinois 60467 (the "Rental Property") is Chicago Title Land Trust Company as Trustee Under Trust Number 1-102 dated March 9, 2000 (the "Land Trust").  (Land Trust attached hereto as Exhibit "B" and incorporated herein).

31.     The beneficiaries of the Land Trust are John and Thomas, each to an undivided one-half interest, as tenants in common.

32.     The power of direction under the Land Trust is held by John and Thomas, or the survivor of them.

33.     At all times relevant herein, a portion (approximately 1,000 square feet) of the Rental Property has been leased by Thomas and John, as the sole beneficiaries of the Land Trust, to a third-party tenant, and the remainder of the Rental Property has been leased by Thomas and John, as the sole beneficiaries of the Land Trust, to C & C for the operation of the law firm.

34.     Until July 24, 2019, all rental income earned from the rental of the Rental Property to C & C or third-party tenants has been held jointly for the benefit of Thomas and John in Account No. 7238297969 at Fifth Third Bank (the "Rental Account").

35.     On July 24, 2019, the entire then current balance of the Rental Account, totaling $39,277.52, was withdrawn from the Rental Account without Thomas' knowledge and consent.

36.     On information and belief, John was the person who withdrew the funds from the Rental Account.

37.     On information and belief, John withdrew the funds from the Rental Account for his own personal use and to prevent Thomas from receiving his share of the monies in that account.

**C. The Shareholders' Agreement**

38.     On January 1, 2000, Thomas and John, the sole shareholders of C & C, entered into a Shareholder's Agreement (the "Shareholders' Agreement"). (Shareholders' Agreement attached hereto as Exhibit "C" and incorporated herein).

39.     Pursuant to the Shareholders' Agreement, on October 1, 2015 Thomas and John executed a Notice of Valuation Set by Shareholders the "Notice of Valuation", wherein Thomas and John agreed that as of that date the Value of the corporation was One Million Dollars ($1,000,000).   (Notice of Valuation Set by Shareholders attached hereto as Exhibit "D" and incorporated herein).

**D. The Proposed Merger**

40.     In 2018, and for many years before that, John expressed an interest in retiring from the practice of law.

41.     On or around May 25, 2018, after discussing possible options with Michael, Thomas suggested to John that it might be possible for John to receive some money toward his retirement if they could merge C & C with another "school law firm", suggesting  that HIPG&S was a mid-sized suburban school law firm that might be interested.

42.     John indicated that he thought that was an option worth pursuing, and asked Thomas to contact the HIPG&S law firm.

43.     On or around May 25, 2018, Thomas contacted the HIPG&S law firm and spoke with one of the senior members, John Izzo, who said that he thought the idea of a merger of the C

& C law firm and the HIPG&S law firm was worth looking into and indicated a willingness to pay C & C to bring its clients to HIPG&S.

44.     On May 25, 2018, before the parties met or had any further discussions about the possible merger, John, Thomas and Michael and the eight controlling members of the HIPG&S law firm and their respective companies entered into a Confidentiality and Non-Disclosure Agreement (the "Confidentiality Agreement"). (Confidentiality Agreement attached hereto as Exhibit "E" and incorporated herein).

45.     On May 31, 2018, at approximately 1:00 p.m. Thomas and Michael met with John Izzo, Ray Hauser, and several other members of the HIPG&S law firm at the HIPG&S office in Flossmoor, Illinois to discuss the possible merger of the firms for the benefit of C & C as a whole.

46.     During the May 31, 2018 meeting, Thomas provided the members of the HIPG&S law firm with copies of confidential financial and client records relating to C & C, including a complete list of C & C public clients (school districts, libraries municipalities and cooperatives, etc.), and a complete summary of billing for those public clients and for the C & C law firm's other areas of practice, for the years 2016, 2017 and the first four months of 2018.

47.     At this meeting the members of HIPG&S were aware of the fact that C & C was a corporation and Thomas and John owed each other fiduciary duties.

48.     During the May 31, 2018 meeting, Thomas also provided the members of the HIPG&S law firm with copies of confidential financial records relating to the total earnings of C & C, the compensation paid to Thomas and Michael, and the benefits received by Thomas and Michael, for the years 2013, 2014, 2015, 2016, 2017 and the first four months of 2018.

49.     During the May 31, 2018 meeting, Thomas explained that John wanted to retire but act as a consultant (perhaps of counsel) in exchange for compensation of Fifty Thousand Dollars

($50,000) per year for three years following the merger, and that Thomas did not want any money in advance for his 50% ownership of the firm, but wanted to work for about 5 more years and then retire provided that Michael could be assured of a job with the firm for a reasonably long period of time at a reasonable compensation and with customary benefits.

50.     After numerous telephone conversations, meetings, and exchanges of draft documents, it became apparent that terms of the merger could not be agreed upon by all parties.

51.     On March 4, 2019, the merger negotiations ended unsuccessfully and Thomas sent Chistopher Petrarca at HIPG&S an email thanking him for his efforts and asked him to return the information that was provided pursuant to the Confidentiality Agreement and be sure to include both Thomas and John in any future correspondence or discussions related to the C & C law firm or its clients.

52.     On March 4, 2019, Christopher Petrarca sent Thomas an email thanking Thomas as well and promising to return the information that was provided pursuant to the Confidentiality Agreement, which he never did.

53.     On information and belief, after March 4, 2019, when the aforesaid merger negotiations ended unsuccessfully and while John was still the President and Treasurer of C & C and a director, shareholder and an active employee of C & C, and without Thomas' knowledge, John continued to communicate with and negotiate an agreement with representatives from HIPG&S about having John join HIPG&S in an "of counsel" role, or some other capacity, under which agreement John would receive compensation from HIPG&S for encouraging existing clients of C & C identified in the Confidentiality Agreement to leave C & C and retain HIPG&S for legal services, and under which John would provide legal services to those clients in direct competition with C & C.

54.     John and HIPG&S intentionally concealed the discussions that they had after March 4, 2019 from Thomas.

55.     On information and belief, after March 4, 2019, while John was still the President and Treasurer of C & C and a director, shareholder and an active employee of C & C, John began to inform existing clients of C & C, including those identified in the Confidentiality Agreement, of his intention to join HIPG&S in an "of counsel" role, or some other capacity, and encourage those existing to leave C & C and retain HIPG&S for legal services.

56.     On August 1, 2019, while John was still the President and Treasurer of C & C and a director, shareholder and an employee of C & C, John began contacting additional clients of C & C to explain his new role with the competing firm of HIPG&S effective August 1, 2019 and solicit those clients to become clients of HIPG&S.  One such contact which was made to the Philip J. Rock Center and School in Glen Ellyn, Illinois, read in part as follows:

> I am pleased to announce that I have joined the firm of Hauser, Izzo, Petrarca, Gleason & Stillman, LLC, "Of Counsel", effective today August 1, 2019. The partners and associates of Hauser Izzo have decades of experience representing school districts and other local governmental entities. This new association will enhance my ability to continue to provide you with the highest quality legal representation.

> Please use this new email address: jcanna@hauserizzo.com starting immediately. My old email will still work for a   transition period, but the new email will be the better way to reach me. You can also contact me through the Oak Brook office at (630)    928-1200    or    the    Flossmoor    office    at    (708) 799-6766. My administrative assistant will be Renee Smith at the Oak Brook office.

57.     The current website for HIPG&S contains an announcement celebrating John's recent joining of the firm effective August 1, 2019.

**E.  John's solicitation of C & C clients**

58.     On July 19, 2019, while John was still the President and Treasurer of C & C and a director, shareholder and active employee of C & C, John left a memorandum in Thomas' mailbox

requesting that Thomas and Michael prepare a summary of open/pending matters for five of C & C's public school district clients, one of C & C's municipal clients and several of C & C's private clients, and gave Thomas nearly identical letters from the representatives of those clients including the Superintendents of Bensenville Elementary School District 2 (dated July 18, 2019), Manteno Community Unit District No. 5 (dated July 10, 2019), Marquardt School District 15 (dated July 16, 2019), Streator Township High School District 40 (dated July 10, 2019), and Community Consolidated School District 93 (dated July 16, 2019), the Mayor of the City of Morris (dated July 10, 2019), and John Haberkorn (dated July 17, 2019), and John Haberkorn as President of Settler's Croft Homeowner's Association (dated July 17, 2019) (collectively the "Client Solicitation Letters"). (Client Solicitation Letters are attached hereto as Exhibit "F" and incorporated herein). The Client Solicitation Letters all indicated that John intended to begin practicing at HIPG&S, a competing school law firm, by August 1, 2019 and requested transfer of all pending matters (open files) to John and the HIPG&S law firm effective August 1, 2019.

59.    After July 19, 2019, Thomas also learned that John has recently contacted several other school districts and public clients that C & C represents, seeking their business for his new competing law firm.

**F. John's Concerted and Malicious Efforts to Prevent the C & C Law Firm from Continuing to Operate**

60.    While John was still the President and Treasurer of C & C and a director, shareholder and an active employee of C & C, John engaged in a pattern of conduct and took deliberate actions to impair C & C, which conduct and actions were motivated by an intent to join the competing law firm of HIPG&S "of counsel" and convince many of the most profitable clients of C & C, particularly the larger public clients of C & C, to follow him to that firm.

61.     On the morning of July 8, 2019, John notified Thomas that John had "filed" documents with the Illinois Secretary of State's office to dissolve C & C, without Thomas' knowledge or approval.

62.     The documents that John filed falsely represented under penalty of perjury that dissolution was approved by consent of all the shareholders entitled to vote on dissolution.

63.     On July 15, 2019, the Illinois Secretary of State's office returned the Articles of Dissolution and related documents that John submitted, after refusing to file them because they could not be filed based upon the information that he included in his submittals.

64.     According to the records of the office of the Illinois Secretary of State, C& C continues to be an "active" Illinois corporation.

65.     On July 31, 2019, the final day before John joined the competing school law firm of HIPG&S, John also attempted to purge all the remaining personnel at C & C other than Thomas, in an effort to prevent C & C from continuing to operate, and ensure that C & C could not compete with HIPG&S for the C & C clients that he was soliciting for HIPG&S.

66.     On July 31, 2019, John unilaterally, without Thomas' knowledge or approval, issued a letter as President of the company terminating the following C & C employees: Cher Mistina, Judith Maranto, and Michael T. Canna (Thomas' son and John's nephew) who was the only remaining attorney at C & C besides Thomas, all effective at 5:00 p.m. on that same day.

67.     On or about July 25, 2019, John removed Thomas as a signer from C & C's checking and savings accounts at Fifth Third Bank preventing Thomas from paying bills, paying the C & C staff, or obtaining any knowledge whatsoever about the C & C business checking account.

68.     John's actions in removing Thomas as a signer of the business bank accounts was not approved by resolution of the directors of C & C, and was without authority in direct violation of Article V, Sections 3 and 4 of the C & C Bylaws which provides as follows:  "SECTION 3. CHECKS, DRAFTS, ETC.  All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness if issued in the name of the corporation, shall be signed by such officer or officers, agent or agents of the corporation and in such manner as shall from time to time be determined by resolution of the board of directors."

69.     As a result of Thomas being removed as a signer on the C & C accounts he was no longer allowed access to any information from Fifth Third Bank as to any payments, transfers, or balances on those accounts and he was no longer able to use the funds in the business bank account for the operation of C & C.

70.     As a result of Thomas being removed as a signer on the C & C accounts, Thomas has also been unable to process normal C & C payroll for the remaining staff necessary for the representation of the remaining clients and other ongoing business of C & C .

71.     On August 1, 2019, Thomas also received a notification from Fifth Third Bank indicating that John had changed the mailing address where the bank will send account communication from the C & C office address, to John's home address: 10849 Crystal Springs Ln., Orland Park, Illinois 60467.

72.     On August 1, 2019, Thomas also received a notification from Fifth Third Bank which indicated that on or about July 24, 2019 John had removed the entire balance of the Rental Account (Acct. No. 7238297969) totaling $39,277.52, leaving a $0 balance in that account, without Thomas' prior knowledge or approval.

73.     On July 31, 2019, in accordance with his regular practice of paying the bills of C

& C; Thomas issued and mailed the following checks from the C& C business checking account:

a) Check No. 27532 dated July 19, 2019 to MassMutual for employee 401(k) contributions;
b) Check No. 27533 dated July 26, 2019 to Thomson Reuters West for Westlaw services;
c) Check No. 27534 dated July 26, 2019 to O'Neal a& Gaspardo for accounting services;
d) Check No. 27535 dated July 26, 2019 to AT & T Teleconference for telephone conference services;
e) Check No. 27536 dated July 26, 2019 to Thomson Reuters West for Westlaw services;
f) Check No. 27537 dated July 26, 2019 to United Health Care for employee health insurance;
g) Check No. 27539 dated July 26, 2019 to Bogdon Maksymkiv for cleaning services;
h) Check No. 27540 dated July 26, 2019 to Nicor for natural gas;
i) Check No. 27541 dated July 26, 2019 to Nicor for natural gas;
j) Check No. 27542 dated July 30, 2019 to Bogdon Maksymkiv for cleaning services;
k) Check No. 27543 dated July 30, 2019 to Parker Storage for rental of storage units for files;
l) Check No. 27544 dated July 30, 2019 to Winterset Office Park for condominium assessments;
m) Check No. 27545 dated July 30, 2019 to ComEd for electricity;
n) Check No. 27546 dated July 30, 2019 to ComEd for electricity;
o) Check No. 27547 dated July 30, 2019 to Insure 1st for liability insurance coverage;
p) Check No. 27548 dated July 30, 2019 to Comcast for the office internet;
q) Check No. 27549 dated July 30, 2019 to FEDEX for delivery services;
r) Check No. 27550 dated July 30, 2019 to Delta Dental of Illinois for dental and vision insurance;
s) Check No. 27551 dated July 30, 2019 to Dearborn National for employee life insurance;
t) Check No. 27552 dated July 30, 2019 to American Express for the company credit card; and
u) Check No. 27561 dated July 30, 2019 to the Rental Account for August rent owed by C& C for leasing a portion of the Rental Property.

74.     On or about July 31, 2019, John unilaterally stopped payment on all checks  issued

after MassMutual check No. 27532.

75.     As a result of John's actions with respect to the finances of C & C Thomas has been

required to pay some C & C bills, and make some federal and state payroll deposits, from his own

private funds,  and make a series of personal loans to C & C to cover other C & C bills and

expenses.

76.     John's actions with respect to the C & C business bank account are intended to cause the financial failure of C & C and prevent C & C from competing for the clients John wants to take with him to his new competing firm, HIPG&S.

77.     On July 31, 2019, the final day before John joined the competing school law firm of HIPG&S, John also prevented payment on paychecks that Thomas had issued for C & C employees, including Thomas, to ensure that Thomas and C & C could not survive financially to compete with HIPG&S for the C & C clients that John was soliciting for HIPG&S.

78.     On or about July 31, 2019, John unliterally discontinued C & C's Westlaw Service.

79.     On or about July 24, 2019, John hired a computer consultant without Thomas' knowledge or consent in order to: (1) use the current main password (known to all C & C employees) to access the C & C computer server which holds all of C & C's digital files to change that main password for the server (the main password allows direct access to the physical server box in the server room to make administrative changes) which password John still refuses to share with Thomas or other C & C employees; (2) change Thomas' personal password that allows Thomas access to the C & C server (from both his office desktop computer and for remote access) which access John has never restored; (3) temporarily change Michael's personal password that allows him access to the server (from both his office desktop computer and for remote access)—an action which he undid on July 26, 2019 upon Thomas' confrontation; (4) disconnected Thomas' and Michael's access to the full intra-office network which he has never restored; (5) cut off all employee access to the C & C scanner; and, upon information and belief, (6) remove and/or copy files from the C & C computer server for use at his new competing law firm, HIPG&S; and (7) take other undiscovered or unknown action affecting the C & C computer network, computers, and server.

80.     On July 26, 2019, Thomas confronted John about tampering with the office server and John just laughed and refused to give Thomas the new passwords he created.  Thomas  has repeatedly requested that John undo the damage that he has done to the C & C computers, and provide the password to the C & C Main Computer Server, but John has refused to do so, and continues to do so, and Thomas' computer access to company files and company computer equipment has still not been restored.

81.     On July 12, 2019, John, as President and Treasurer of C & C, also sent letters to the C & C health and life insurance representatives at the Kurland Insurance Agency, without Tom's knowledge or approval, directing that the health insurance coverage with United Healthcare and life insurance coverage with Dearborn National for Thomas and his wife, and for an office secretary, Judith Maranto (Judy), be terminated effective July 31, 2019.

82.     John did not inform Thomas that he had terminated the C & C health and life insurance coverage until July 24, 2019, leaving Thomas little time to undo the action John had taken or arrange for insurance coverage for himself and his wife.

83.     After John removed Thomas as a signer on the C & C bank account he cancelled check number  27537 that Thomas prepared and mailed to Kurland Insurance Agency on July 30, 2019 for the health and life insurance coverage for Thomas and his wife, and for the office secretary, Judith Maranto, despite the fact that health insurance for Thomas and Judy was paid for by C & C throughout the course of their 20 plus years of employment with the company.

84.     On July 29, 2019, John removed office furniture, file cabinets and other items owned by C & C from the law firm's office without authority or approval, despite being told not to do so, including two (2) three-drawer lateral file cabinets (36"H x 36 W) from the secretarial area; two (2) two-drawer lateral files cabinets (28"H x 36"W), the telephone and the computer

(containing confidential information belonging to C & C) from the northeast corner office; and the attorney's desk, credenza, the desk chair, the two-drawer wood lateral filing cabinet, the round meeting table, four (4) guest chairs, the reading table and lamp, the reading chair, two (2) floor to ceiling standing shelf units (36"W), and the computer (containing confidential information belonging to C & C) from the upstairs office.

85.     John also directed Cher Mistina, to box up over nine hundred client files that he intended to remove or has removed from the property as well.

86.     On or about July 30, 2019, John deleted all files stored on the server created by a past employee, Dawn M. Hinkle.

87.     On or about July 31, 2019, John disabled the website for C & C without Thomas' knowledge or approval.

88.     On or about August 1, 2019, John also deleted all files stored on the server created by John.

89.     On August 1, 2019, the day John joined the competing school law firm of HIPG&S, but while John was still the President and Treasurer of C & C and a director, shareholder and active employee of C & C, Thomas served upon John a Request for Examination of Corporate Records By Shareholder Pursuant to 805 ILCS 5/7.75 (the "Request for Examination"). (Request for Examination attached hereto as Exhibit "G" and incorporated herein).

90.     Pursuant to Section 7.75 (b): "Any person who is a shareholder of record shall have the right to examine, in person or by agent, at any reasonable time or times, the corporation's books and records of account, minutes, voting trust agreements filed with the corporation and record of shareholders, and to make extracts therefrom . . .".

91.     In the Request for Examination, Thomas, as a director, officer, and 50% shareholder of Canna and Canna, Ltd., requested to examine the following corporate books and records of accounts for Canna and Canna, Ltd. that Thomas does not have access to, for the purpose of reviewing the actions and dealings of the C & C and its officers, directors, employees, and owners concerning corporate business matters and the clients of the business and the proper and lawful administration of accounts and finances of C & C and to ensure that the company and its said representatives have acted in a proper and lawful manner:

1. A copy of any resolution of the board of directors of Canna and Canna, Ltd. authorizing the removal of Thomas as a signatory under Fifth-Third Bank Account number 7238075035.

2. All documents including but not limited to notes, records, correspondence, signature cards, letters, or other documents given to or received from Fifth-Third Bank relating in any way to the removal of Thomas as a signatory on Fifth-Third Bank Account number 7238075035.

3. All documents including but not limited to financial records, notes, records, correspondence, signature cards, letters, or other documents regarding any activity on C & C bank accounts since July 24, 2019 including but not limited to checks, bank statements, withdrawal slips, deposit slips, signature cards, requests for change of address, etc.

4. Copies of any and all written communications (including but not limited to letters, e-mails, facsimiles, text messages, notices, and notes) from John to any clients or former clients of C & C, including but not limited to the clients or former clients referenced in John's Memorandum to Thomas dated July 19, 2019, concerning: 1) John's intention to leave the C & C law firm; 2) the rights of those clients concerning future legal

representation, including the right to choose whether to continue with C & C, transfer their business to John, neither, or both; or 3) the future business operations of C & C (including but not limited to any claim or representation by John that the C & C law firm has been or is going to be dissolved or has been or is going to cease doing business).

92.     In the Request for Examination, Thomas requested that the examination of the aforesaid documents take place on Monday, August 5, 2019, at 1:00 p.m. in the conference room at the office of C & C at 10703 W. 159th St., Orland Park, IL 60467.

93.     On August 5, 2019, Thomas, along with his son Michael, arrived in the conference room at the office of C & C at 10703 W. 159th St., Orland Park, IL 60467 at approximately 12:55 p.m. and waited for John to arrive.

94.     At approximately 1:08 p.m. on August 5, 2019, John arrived at the C & C office, walked up to a counter just outside the door of the conference room, gathered up some paperwork from the top of the counter and then turned and walked back out of the office door without ever entering the conference room or delivering any of the requested documentation to Thomas for examination, or saying a word to Thomas or Michael.

95.     John has continued to refuse to provide the requested records.

**G. Harms Suffered by John and C & C**

96.     John unilaterally took the corporate opportunity of merging C & C with another firm which would have yielded Thomas and C & C revenues in excess of $500,000 had a merger been completed.

97.     As a result of the actions described herein, John disabled C & C's ability to effectively serve its clients that were not stolen by John resulting in lost revenues.

98. While still an officer and president of C & C John secretly funneled clients from C & C to HIPG&S detailed in Exhibit "F" who pay C & C in excess of $300,000 per year in annual fees and who C & C reasonably anticipated continuing to service for the foreseeable future.

**V. CLAIMS**

**COUNT I**
*C & C v. John*
**(BREACH OF FIDUCIARY DUTY)**

99. Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 99 of Count I of this Complaint as though fully set forth herein.

100. Any demand by Thomas for C & C to pursue this action was futile based on the facts stated herein.

101. John owed fiduciary duties as shareholder, officer, director, employee and authorized agent of C & C.

102. As alleged herein, John breached his fiduciary duties to C & C by, while still the President and Treasurer of C & C and a director, shareholder and active employee of C & C, among other things:

    a) Soliciting clients to transfer their business to a competing firm prior while still the President and Treasurer of C & C and a director, shareholder and active employee of C & C, or informing Thomas of the solicitation;

    b) Not informing Thomas of his intent to solicit clients;

    c) Taking a corporate opportunity of a merger with another firm for himself;

    d) Joining a competing company;

    e) Hiding or removing physical firm files;

    f) Taking both physical and digital computer files;

    g) Tampering with the C & C IT system;

h)  Deleting computer files;

i)  Cutting off other employees' access to computer files;

j)  Cutting off other employees' access to the company scanner;

k)  Changing the passwords on the C & C computers and server, and refusing to provide the new password to the firm employees and owners;

l)  Disabling the firm's website;

m)  Refusing to provide business records to another shareholder;

n)  Eliminating Thomas' right to access the firm bank accounts;

o)  Taking firm money;

p)  Directing all bank correspondence to his home;

q)  Stopping payment on checks written by C & C;

r)  Violating C & C's bylaws;

s)  Unilaterally cancelling C & C vendor contracts;

t)  Cancelling the C & C legal research (WestLaw) account;

u)  Terminating all non-owner employees;

v)  Terminating employee health insurance coverage (including the health insurance coverage of the remaining co-owner and his wife);

w)  Terminating the C & C 401(k) retirement plan;

x)  Taking tangible property from C & C; and

y)  Otherwise breaching his fiduciary duties as alleged herein.

103.    The actions described above amount to a breach of the fiduciary duties owed by John to C & C.

104.     As a direct and proximate result of John's breach of fiduciary duties detailed herein, C & C damaged in an amount in excess of $500,000.

WHEREFORE, Plaintiff, THOMAS J. CANNA derivatively on behalf of CANNA & CANNA, LTD., respectfully requests that this Court enter judgment in its favor and against Defendant, JOHN F. CANNA for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

### COUNT II
### *C & C v. John*
### (CONVERSION -TANGIBLE PROPERTY)

105.     Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 105 of Count II of this Complaint as though fully set forth herein.

106.     Any demand by Thomas for C & C to pursue this action was futile based on the facts stated herein.

107.     As alleged herein, John stole business records, equipment, and furniture from C & C.

108.     C & C owned/controlled the business records, equipment, and furniture detailed herein.

109.     John had neither a right to the business records, equipment, nor furniture nor any right to take the business records, equipment, and furniture out of the office.

110.     C & C had the right to immediate possession of the business records, equipment, and furniture.

WHEREFORE, Plaintiff, THOMAS J. CANNA derivatively on behalf of CANNA & CANNA, LTD., respectfully requests that this Court enter judgment in its favor and against Defendant, JOHN F. CANNA for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

### COUNT III
### *C & C v. John*
### (UNJUST ENRICHMENT)

111.    Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 111 of Count III of this  Complaint as though fully set forth herein.

112.    Any demand by Thomas for C & C to pursue this action was futile based on the facts stated herein.

113.    John personally received fees from C & C clients and payments from HIPG&S.

114.    C & C entrusted John as an officer, director, shareholder, and employee of the corporation.

115.    John would be unjustly enriched if he were permitted to retain any of the fees from C & C clients or payments he received from HIPG&S in violation of his fiduciary obligations or contrary to his promises.

116.    John's unjust enrichment has been to the detriment of C &C.

117.    C &C did not gratuitously give John its clientele.

118.    John continues to refuse to remit payment for the amount owed to C & C.

119.    John's retention of the funds after C &C's demand for payment which is properly due and owing violates fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff, THOMAS J. CANNA derivatively on behalf of CANNA & CANNA, LTD., respectfully requests that this Court enter judgment in its favor and against Defendant, JOHN F. CANNA for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

### COUNT IV
### *Thomas v. John*
### (BREACH OF FIDUCIARY DUTY)

120.    Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 120 of Count IV of this Complaint as though fully set forth herein.

121.    John owed fiduciary duties as shareholder, officer, and authorized agent of C & C.

122.    As alleged herein, John breached his fiduciary duties to Thomas by, while still the President and Treasurer of C & C and a director, shareholder and active employee of C & C, among other things:

a)      Soliciting clients to transfer their business to a competing firm prior while still the President and Treasurer of C & C and a director, shareholder and active employee of C & C, or informing Thomas of the solicitation;

b)      Not informing Thomas of his intent to solicit clients;

c)      Taking a corporate opportunity of a merger with another firm for himself;

d)      Joining a competing company;

e)        Hiding or removing physical firm files;

f)        Taking both physical and digital computer files;

g)        Tampering with the C & C IT system;

h)        Deleting computer files;

i)        Cutting off other employees' access to computer files;

j)        Cutting off other employees' access to the company scanner;

k)        Changing the passwords on the C & C computers and server, and refusing to provide the new password to the firm employees and owners;

l)        Disabling the firm's website;

m)        Refusing to provide business records to another shareholder;

n)        Eliminating Thomas' right to access the firm bank accounts;

o)        Taking firm money;

p)        Directed all bank correspondence to his home;

q)        Stopping payment on checks written by C & C;

r)        Violating C & C's bylaws;

s)        Unilaterally cancelling C & C vendor contracts;

t)        Cancelling the C & C legal research (WestLaw) account;

u)        Terminating all non-owner employees;

v)        Terminating employee health insurance coverage (including the health insurance coverage of the remaining co-owner and his wife);

w)        Terminating the C & C 401(k) retirement plan;

x)        Taking tangible property from C & C;

y)        Otherwise breaching his fiduciary duties as alleged herein; and

z)      Otherwise depriving Thomas of the rights and benefits of ownership

123.    The actions described above amount to a breach of the fiduciary duties owed by John to Thomas.

124.    As a direct and proximate result of John's breach of fiduciary duties detailed herein, Thomas has been deprived of all rights and benefits of ownership and was damaged in an amount in excess of $300,000.

125.    Thomas's harms and losses are unique to him not derivative of C & C.

WHEREFORE, Plaintiff, THOMAS J. CANNA, respectfully requests that this Court enter judgment in its favor and against Defendant, JOHN F. CANNA for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

## COUNT V
### *Thomas v. John*
### (ACTION UNDER 805 ILCS 5/12.56)
### Compensatory Damages for Failure to Provide
### Shareholder Access to Books, Records and Finances

126.    Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 126 of Count V of this Complaint as though fully set forth herein.

127.    Thomas is a 50% shareholder of C & C, a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association.

39.     John, a director of C & C has acted in a manner that is illegal, oppressive, or fraudulent with respect to Thomas in his capacity as a shareholder, director, and  officer of C & C.

40.     The corporation assets of C& C are being misapplied or wasted.

128.     As a 50% shareholder of C & C, Thomas has a right to access the books, records and finances of C & C pursuant to 805 ILCS 5/7.75(b).

129.     Thomas has requested that John provide him access to the books, records and finances of C & C on numerous occasions and John specifically refused to respond to the request by Thomas to examine specific corporate books and records of account for C & C on Monday, August 5, 2019 at 1:00 p.m.

130.     Notwithstanding Thomas's demands, John has refused and prevented Thomas from having access to the books, records and finances of C & C.

131.     Therefore, pursuant to 805 ILCS 5/7.75(d), John is personally liable to Thomas in a penalty of up to ten (10) percent of the fair value of the shares owned by Thomas, in addition to any other damages or remedy afforded him by law.

WHEREFORE, Plaintiff, THOMAS J. CANNA, respectfully requests that this Court enter judgment in its favor and against Defendant, JOHN F. CANNA for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000, attorneys' fees, plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

### COUNT VI
*Thomas v. John*
### (CONVERSION -RENTAL INCOME)

132.     Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 132 of Count VI of this Complaint as though fully set forth herein.

133.     On or about July 24, 2019 John converted rental income earned from the rental of the Rental Property to C & C and others from Thomas by removing funds that were being held jointly for the benefit of Thomas and John in the amount of $39,277.52 from the Rental Account (Account No. 7238297969) at Fifth Third Bank.

134.     Any demand by Thomas for John to return such funds was futile based on the facts stated herein.

135.     Thomas and John jointly owned/controlled payments from lessees of the Rental Property, including C & C, and the records of lessee payments.

136.     John had neither a right to the lessee payments nor any right to prevent Thomas from having access to the financial records relating to the Rental Property.

137.     Thomas had the right to immediate possession of the lessee payments and the financial records relating to the Rental Property.

WHEREFORE, Plaintiff, THOMAS J. CANNA respectfully requests that this Court enter judgment in his favor and against Defendant, JOHN F. CANNA for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000 plus punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

## COUNT VII
### *Thomas v. John*
### (ACTION UNDER 805 ILCS 5/12.56)

138.     Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 138 of Count VII of this Complaint as though fully set forth herein.

139.     Thomas is a 50% shareholder of C & C, a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association.

140.     John, a director of C & C has acted, is acting, and will act in a manner that is illegal, oppressive, or fraudulent with respect to Thomas in his capacity as a shareholder, director, and officer of C & C.

141.     The corporation assets of C & C are being misapplied or wasted.

WHEREFORE, Plaintiff, THOMAS J. CANNA, respectfully requests that this Court enter judgment in its favor and against Defendant, JOHN F. CANNA for the following relief:

(A) The setting aside of any actions of Defendant, JOHN F. CANNA, individually or as a director, officer or owner of CANNA AND CANNA, LTD. relating to the control of the bank accounts of CANNA AND CANNA, LTD., including the removal of Plaintiff, THOMAS J. CANNA as a signatory on the bank accounts of CANNA AND CANNA, LTD.;

(B) The removal of Defendant, JOHN F. CANNA from any office he currently holds as a director or officer of CANNA AND CANNA, LTD.;

(C)  Order Defendant, JOHN F. CANNA, to immediately surrender his shares of stock in C & C to the company without compensation;

(D)  An accounting with respect to the activities of Defendant, JOHN F. CANNA concerning the banks accounts, payroll activities and other financial affairs of Defendant, JOHN F. CANNA for the entire 2019 calendar year up to and including the date of such accounting; and

(E) Order Defendant JOHN F. CANNA to pay THOMAS J. CANNA the fair value of his ownership interest in CANNA AND CANNA, LTD.

## COUNT VIII
### *C & C v. John*
### (COMPUTER FRAUD AND ABUSE ACT 18 U.S.C.S. § 1030(a)(4))

142.     Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 142 of Count VIII of this Complaint as though fully set forth herein.

143.     Any demand by Thomas for C & C to pursue this action was futile based on the facts stated herein.

144.     John frequently works from the state of Florida on C & C matters and the office computers and server at C & C all rely on access to the internet thus the computers and server were utilized in interstate commerce and the harms suffered exceed the jurisdictional limits of $5,000.

145.     C & C has a website hosted by Network Solutions at www.cannalaw.com.

146.     The C & C computers and server are devices for processing and storing data.

147.     Through the foregoing actions alleged herein, John accessed C & C's protected computers and server without authorization and/or exceeding authorized access to obtain information, solicit customers, and disable C & C from competing with his new firm.

148.      In particular, John intentionally accessed the protected computers and server, exceeding his authorized access, and used his access to obtain and alter information that he was not entitled to from those protected computers and server.

149.     John, exceeding his authorized access, used his access to obtain files of value that he was not entitled to, and the harms suffered exceed the jurisdictional limits of $5,000.

150.     John, intentionally accessed a protected computer exceeding his authorized access and recklessly caused damage and loss, and the harms suffered exceed the jurisdictional limits of $5,000.

151.    In addition, John has taken digital computer files, tampered with the C & C IT system, deleted computer files, cut off other employees' access to computer files, cut off other employees' access to the company scanner, changed the passwords on the C & C computers and server and refused to provide the new password to the firm employees and owners, disabled the firm's website, and disabled C & C's Westlaw account.

152.    Defendants' conduct has damaged C & C in excess of $5,000, such damages to be determined at trial.

153.    Unless Defendant is preliminarily and permanently enjoined from engaging in fraudulent actions, C & C will be irreparably harmed. No adequate remedy at law exists for this breach.

WHEREFORE, Plaintiff, THOMAS J. CANNA derivatively on behalf of CANNA & CANNA, LTD., respectfully requests that this Court enter judgment in its favor and against Defendant, JOHN F. CANNA, permanently enjoining him from further violations of 18 U.S.C.S. § 1030(a)(4), for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000, attorneys' fees, plus punitive damages in an amount sufficient to punish and deter Defendant JOHN F. CANNA from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

**COUNT IX**
*C & C v. HIPG&S*
**(TORTIOUS INTERFERENCE)**

154.    Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 155 of Count IX of this Complaint as though fully set forth herein.

155.    Any demand by Thomas for C & C to pursue this action was futile based on the facts stated herein.

156.    HIPG&S knew of C & C's contractual relationship with its customers and employees.

157.    HIPG&S, directly and through its agent John, intentionally interfered with the prospective economic advantage of C & C by secretly soliciting C & C's clients.

158.    Through the actions described herein, HIPG&S, directly and through John, unlawfully and tortiously interfered with C & C's contractual relationship with its clients.

159.    As a result of HIPG&S's tortious interference with C & C's contractual relationships, C & C was harmed.

WHEREFORE, Plaintiff, THOMAS J. CANNA derivatively on behalf of CANNA & CANNA, LTD., respectfully requests that this Court enter judgment in its favor and against Defendant, HAUSER, IZZO, PETRARCA, GLEASON, & STILLMAN, LLC for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000 plus punitive damages in an amount sufficient to punish and deter Defendant HIPG&S from engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

## COUNT X
### *Thomas and C & C v. HIPG&S*
### (AIDING AND ABETTING BREACH OF FICUCIARY DUTY)

160.     Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 160 of Count X of this Complaint as though fully set forth herein.

161.     Any demand by Thomas for C & C to pursue this action was futile based on the facts stated herein.

162.     As alleged herein John breached his fiduciary duties owed to Thomas and C & C.

163.     HIPG&S was aware of its role as a party to the tortious activity by John.

164.     HIPG&S knowingly and substantially assisted in John's breach of fiduciary duty in order to benefit HIPG&S.

165.     John could not have completed his tortious acts but for having a firm where the clients he stole could be serviced.

166.     HIPG&S knew that as an officer director, shareholder, and employee of C & C, John owed fiduciary duties to C & C not to commence competition prior to termination.

167.     John breached his fiduciary duties to C & C by encouraging customers and employees to leave C & C in favor of HIPG&S as detailed herein.

168.     As a direct and proximate result of the breaches alleged herein, C & C has lost revenue as a result of losing clients and other harm to the business.

WHEREFORE, Plaintiff, THOMAS J. CANNA individually, and derivatively on behalf of CANNA & CANNA, LTD., respectfully requests that this Court enter judgment in its favor and against Defendant, HAUSER, IZZO, PETRARCA, GLEASON, & STILLMAN, LLC for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000 plus punitive damages in an amount sufficient to punish and deter Defendant from

engaging in such misconduct in the future, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

**COUNT XI**
***Thomas and C & C v. HIPG&S***
**(BREACH OF CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT)**

170.    Thomas repeats and realleges the allegations contained in Paragraphs 1 through 99 of this Complaint as Paragraph 170 of Count XI of this  Complaint as though fully set forth herein.

171.    Any demand by Thomas for C & C to pursue this action was futile based on the facts stated herein.

172.    As alleged herein, on May 25, 2018, before the parties met or had any further discussions about the possible merger, John, Thomas and Michael and the eight controlling members of the HIPG&S law firm, and their respective companies, entered into the Confidentiality and Non-Disclosure Agreement .

173.    On May 31, 2018, Thomas, relying upon the parties' agreement to maintain confidentiality and non-disclosure of important information about C & C, provided the members of the HIPG&S law firm with copies of confidential financial and client records relating to C & C, including a complete list of C & C public clients (school districts, libraries municipalities and cooperatives, etc.), a complete summary of billing for those public clients and for the C & C law firm's other areas of practice, for the years 2016, 2017 and the first four months of 2018.

174.    On May 31, 2018, Thomas, relying upon the parties' agreement to maintain confidentiality and non-disclosure of important information about C & C, also provided the members of the HIPG&S law firm with copies of confidential financial records relating to the total earnings of C & C, the compensation paid to Thomas and Michael, and the benefits received by

Thomas and Michael, for the years 2013, 2014, 2015, 2016, 2017 and the first four months of 2018.

175.    Thomas performed all that was required of him under the Confidentiality and Non-Disclosure agreement.

176.    HIPG&S breached the Confidentiality and Non-Disclosure agreement by using the information provided by Thomas to pursue an employment relationship with John, without Thomas' knowledge or consent, wherein John would solicit the clients of C & C identified in that information to leave C & C and become clients of HIPG&S.

177.    As a direct and proximate result of the breaches alleged herein, C & C has lost revenue as a result of losing clients and other harm to the business.

WHEREFORE, Plaintiff, THOMAS J. CANNA, individually, and derivatively on behalf of CANNA & CANNA, LTD., respectfully requests that this Court enter judgment in its favor and against Defendant, HAUSER, IZZO, PETRARCA, GLEASON, & STILLMAN, LLC for compensatory damages in an amount not currently ascertainable but believed to be in excess of $75,000 plus attorneys' fees, prejudgment interest, expenses, costs, and for any and all other relief that this Court deems necessary and appropriate under the circumstances.

Respectfully submitted,

**THOMAS J. CANNA, individually and derivatively on behalf of CANNA & CANNA, LTD.**
Plaintiff

By: /s/*Alexander N. Loftus*
       One of His Attorneys

,

Alexander Loftus, Esq.
Ryan Moore, Esq.
STOLTMANN LAW OFFICES, P.C.
161 N. Clark St. Suite 1600
Chicago, Illinois 60601
T: 312.332.4200
C: 312.772.5396
alex@stoltlaw.com

Dated:  August 17, 2019