IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. CANNA, et al. | ) | |
| | ) | Case No. 19 CV 05555 |
| Plaintiff, | ) | |
| | ) | Honorable Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| JOHN F. CANNA, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JOHN F. CANNA'S MEMORANDUM IN SUPPORT
OF HIS MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1)**

Defendant JOHN ("JACK") CANNA, by and through his attorneys, Cotsirilos, Tighe, Streicker, Poulos & Campbell, Ltd., respectfully requests that the Court, under the *Colorado River* abstention doctrine and Rule 12(b)(1), dismiss the Complaint for lack of subject matter jurisdiction.

**I.     INTRODUCTION**

This lawsuit is the second of two nearly identical cases between two brothers and law partners arising from the Plaintiff Thomas Canna's repudiation of the brothers' agreement to dissolve their small firm in Orland Park. On August 15, 2019, Jack Canna filed suit and an emergency motion for a temporary restraining order ("TRO") against Thomas Canna in Cook County seeking a declaratory judgment that Thomas agreed to dissolve the law firm, judicial dissolution, and an injunction prohibiting Thomas from depleting the firm's assets and taking other unilateral actions purportedly on behalf of the dissolved firm. The Cook County court entered a TRO against Thomas on August 29, and that order remains effective. Jack amended his complaint, and Thomas's responsive pleading is due December 23.

Just two days after Jack filed the Cook County action, on August 17, Thomas filed this

retaliatory action. The main distinctions between the two cases are: (1) Thomas alleged a violation of the Computer Fraud and Abuse Act ("CFAA") in order to create federal question jurisdiction; and (2) Thomas added Jack's current law firm, Hauser, Izzo, Petrarca, Gleason & Stillman, LLC ("Hauser Izzo") as a defendant. These are manufactured distinctions without a difference. All the claims and issues stated in this federal action can be brought in the previously filed state court action, and resolution of the state court action would create *res judicata* on the claims Plaintiff improperly seeks to bring in this Court. In addition, Thomas's CFAA claim borders on frivolous. Therefore, and for all the reasons set forth below, this Court should dismiss this case under the *Colorado River* doctrine and for lack of subject matter jurisdiction.

## II. THE COMMON FACTS GIVING RISE TO THE TWO LAWSUITS

Both lawsuits and all claims therein arise from the following set of common facts and events. Defendant Jack Canna and Plaintiff Thomas Canna have been practicing law together for nearly 35 years. (Ex. A, Cook County Complaint at ¶1).[1] Since at least 1990, the brothers have been equal 50 percent shareholders in Canna and Canna, Ltd. (the "Firm"). (Fed. Compl. at ¶15). Jack specialized in representing school districts, municipalities and other public entities, while Thomas developed a more general law practice. (Ex. B, CC Am. Compl. at ¶11). In 2000, the brothers set up a land trust ("the Trust") that holds title to two office condominiums that housed the Firm's offices. (Fed. Compl. at ¶30; Ex. B, CC Am. Compl. at ¶15).

In June 2017, Jack Canna was diagnosed with Chronic Lymphocytic Leukemia, a serious blood disorder that required treatment by an oncologist and, as a result, explored winding down his practice with his brother. (Fed. Compl. at ¶41; Ex. B, CC Am. Compl. at ¶17). The brothers

---

[1] The Cook County complaint and amended complaint are cited as "CC Compl." and "CC Am. Compl." respectively. This federal complaint is cited as (Fed. Compl.).

agreed to seek a merger with Defendant Hauser, Izzo, Petrarca, Gleason, & Stillman LLC ("Hauser Izzo"), a firm with a similar public sector practice. (Fed. Compl. at ¶41; Ex. B, CC Am. Compl. at ¶18). Jack directed Thomas to handle the merger negotiations and between May 2018 and March 2019, Thomas negotiated with Hauser Izzo. (Fed. Compl. at ¶¶43-51; Ex. B, CC Am. Compl. at ¶18). However, on March 4, 2019, Thomas unilaterally ended the negotiations. ((Fed. Compl. at ¶52; Ex. B, CC Am. Compl. at ¶18).

Shortly thereafter on March 13, Thomas demanded dissolution of Canna and Canna. When dissolution discussions did not move expeditiously enough for Thomas, he even hired a lawyer and threatened to file a lawsuit to dissolve the Firm. No later than April 29, the brothers agreed to dissolve the Firm on July 31, 2019 and vacate and sell the two trust properties. (Ex. B, CC Am. Compl. at ¶19). Thomas took several steps to wind down the Firm: (1) informing staff of the dissolution; (2) drafting a dissolution memo; (3) informing the administrator of the Firm's 401(k) plan that the firm was dissolving; and (4) hiring outside counsel to effectuate a speedier dissolution. (*Id*. at ¶¶20, 21, 25, 28). Thomas also prepared to start a new firm with his son by applying for malpractice insurance and informing Jack that he was going to sign a lease for his new firm's office space. (*Id*. at ¶¶27, 28).

Meanwhile Jack acted in reliance on Thomas' agreement to dissolve the firm. Most notably, Jack agreed to join Hauser Izzo as "of counsel." (Fed. Compl. at ¶53; Ex. B, CC Am. Compl. at ¶29). Jack informed clients of the Firm's dissolution and his plans to continue practicing at Hauser Izzo. (Fed. Compl. at ¶¶58; Ex. B, CC Am. Compl. at ¶29). Many of those clients directed Jack to transfer their files to Hauser Izzo.

On June 17, 2019, three months after demanding dissolution and six weeks after their agreement, Thomas unilaterally repudiated his agreement to the dissolution. (Ex B, CC Am.

3

Compl. at ¶30). However, given the preparations already undertaken by both brothers to dissolve the Firm and transition their clients, Thomas's repudiation of the agreement came too late. Thus, Jack continued to take steps consistent with dissolution, including transitioning his clients and transferring their files – per the clients' directions – to Hauser Izzo. Thomas alleges that as part of this transition on or about July 24, 2019, Jack hired a computer consultant to access the Firm's computer servers and copy files from the server for use at Hauser Izzo. (Fed. Compl. at ¶79). Thomas also alleges that Jack deleted certain files and changed a number of passwords preventing Thomas and others from accessing the server. (*Id*. at ¶¶79, 86, 88).

Meanwhile, Thomas also openly disparaged Jack to third parties, telling them that Jack had no understanding of his responsibilities as a lawyer. (Ex. B, CC Am. Compl. at ¶33). On August 4, 2019, Thomas purported to usurp the role of President of Canna and Canna from Jack, indicating to the one remaining staff member that Thomas would continue the Firm indefinitely and continue to pay himself, his son, and the one remaining staff member with the Firm's funds. (*Id*. at ¶34). Thomas opened a new bank account, purportedly on behalf of the Firm but which he solely controlled, and deposited Firm funds into that account. (*Id*. at ¶35). On August 5, 2019, Thomas falsely identified himself to the Firm's clients as the President of Canna and Canna, Ltd. and improperly directed those clients to send payments due to the Firm directly to him for deposit into the account that Thomas solely controlled. (*Id*.). Thomas misrepresented to clients that Jack still worked for the Firm and implied that Jack engaged in misconduct related to the Firm's bank accounts and funds, stating that "[d]ue to the recent actions of John F. Canna, the bank accounts of Canna and Canna, Ltd. are not currently accessible by Thomas J. Canna." (*Id*.).

III. **THE TWO NEARLY IDENTICAL PARALLEL LAWSUITS**

    A. **The Cook County Lawsuit**

In order to stop Thomas's continued unauthorized depletion of Firm assets solely for the

4

benefit of Thomas's new practice, Jack had no choice but to file suit and seek a TRO in the Circuit Court of Cook County on August 15, 2019. (Ex. A, CC Compl.). In the lawsuit, Jack sought a declaratory judgment recognizing the brothers' agreement to dissolve the Firm, or in the alternative, for promissory estoppel; judicial dissolution of the Firm; injunctive relief against Thomas; and judicial sale of the trust properties. Jack's emergency motion for a TRO sought to enjoin Thomas from, among other actions, excluding Jack from the management of the Firm and unilaterally depleting Firm assets solely for the benefit of his new law practice, among other things. On August 29, 2018, the Cook County Circuit Court entered a TRO against Thomas. (Ex. C; Ex. D, TRO Hearing Transcript). That order remains in effect. After Thomas reneged on his agreement to mediate, Jack amended his complaint, adding counts for breach of contract, tortious interference with economic advantage, defamation *per se,* and violation of the Illinois Right of Publicity Act. (Ex. B, CC Am. Cplt.). Thomas's responsive pleading to Jack's Amended Complaint is due December 23, 2019.

      **B.**     **This Federal Lawsuit**

Just two days after Jack filed the Cook County lawsuit, Thomas Canna filed this retaliatory Complaint against Jack and Hauser Izzo. Thomas (individually, and purportedly derivatively on behalf of Canna and Canna) alleges claims against Jack for breach of fiduciary duty, conversion, unjust enrichment, a state law books and records claim, and violation of the CFAA. Thomas alleges tortious interference, aiding and abetting breach of fiduciary duty, and breach of contract against Hauser Izzo. Each and every count in the federal complaint arises from the same operative facts as those claims in the state court action. Notably, the CFAA claim is the sole basis for federal subject matter jurisdiction, as no other claim arises from a federal question, and diversity jurisdiction is improper as the parties are all residents of Illinois. (*Id*. at ¶9).

The primary factual and legal issues raised in the state court action are the same as those raised in Thomas's federal action: namely whether Thomas (not Jack) terminated merger negotiations with Hauser Izzo; the legitimacy of Thomas's last-minute repudiation of his agreement to dissolve the Firm; and the contours of Jack's fiduciary duties to Canna and Canna and whether he breached any of them.

IV. ARGUMENT

The Court should abstain from exercising jurisdiction under 12(b)(1) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Alternatively, the Court should dismiss the Complaint for lack of subject matter jurisdiction because Plaintiff's attempt to manufacture jurisdiction through his CFAA claim falls woefully short of the pleading requirements. Because Plaintiff fails to state a claim under the CFAA, the Court should dismiss that count and leave adjudication of Plaintiff's remaining state law counts to the state court.

### A. The Court Should Dismiss this Case Under the *Colorado River* Abstention Doctrine.

Under the *Colorado River* doctrine, a federal court "may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration." *Freed v. Friedman*, 215 F. Supp. 3d 642, 648 (N.D. Ill. 2016) (quoting *Colorado River*, 424 U.S. at 818). Application of the doctrine requires a two-part inquiry. First, a court must determine "whether the state and federal court actions are parallel." *Freed*, 215 F. Supp. 3d at 648. If the suits are parallel, "the court then must weigh ten non-exclusive factors to determine whether abstention is proper." *Id*. In this case, there is no question the two suits are parallel, and nine of the ten factors weigh in favor of abstention.

#### 1. The Federal and State Lawsuits Are Parallel.

Parallelism exists when "there is a substantial likelihood that the [state] litigation will

dispose of all claims presented in the federal case." *Freed*, 215 F. Supp. 3d at 648 (citing *AAR Int'l[p*, 250 F.3d at 518). The lawsuits derive from and will be decided by exactly the same set of facts and legal issues involving the same parties. Indeed, adjudication of the claims in the Cook County lawsuit would undoubtedly dispose of all the claims presented in this lawsuit. For example, a finding in the Cook County action that Jack properly relied on Thomas's agreement to dissolve despite his eleventh-hour change-of-heart – the exact basis for Jack's promissory estoppel claim – would give Jack a complete *res judicata* defense to nearly all claims. Such a result is not only a theoretical possibility but a probable outcome. In granting Jack's motion for a TRO, the Cook County court found a likelihood of success on Jack's promissory estoppel claim. (See Ex. D, TRO Tr. at 56:3-18).

As the Cook County court found during the hearing on Thomas Canna's motion to dismiss the state court action "[t]here's absolutely no reason, none whatsoever, that all of the counts that Mr. Tom Canna had filed in federal court could not have been a counterclaim in this courtroom as well as an answer to the complaint or a third-party complaint as it relates to the law firm." (Ex. D, TRO Tr. at 14:3-8). Similarly, the Cook County court opined: "why should John Canna have to answer that [federal] complaint when he's the one that filed in this courtroom *and Mr. Tom Canna could have gotten the same relief that he's asking for there here? And the res judicata effect on a foreign jurisdiction. Everybody would have been bound by either one of the two courts' decisions."* (Ex. D, TRO Tr. 14-15) (emphasis added).

Similarly, the *Freed* court also looked to "principles of *res judicata*" in determining that an adverse determination in state court "almost certainly would provide [the defendant] an immediate victory in [the federal] case." *Id*. at 650. The court further noted the possibility that while a state court ruling involving one party might not apply to a different party in the federal

7

lawsuit, "parallelism under *Colorado River* requires "only that there be a substantial likelihood, not a certainty, that all claims will be disposed). *Id*.

Further, in *Liebert Corp. v. Mazur,* 2004 WL 2095666, the district court dismissed Plaintiff's action under the CFAA "without prejudice with leave to move to reinstate the case within 30 days after the state case becomes final…" *Id.* at *4. The court found:

> litigation of the [state and federal] claims will involve identical or almost identical discovery and very similar factual proof at trial. Also, even if plaintiffs do not amend the state lawsuit to add CFAA claims, resolution of the state law case would likely dispose of the CFAA claims as well because of Illinois law as to *res judicata* and claim splitting. Nothing in the CFAA's jurisdictional provision indicates that civil claims under the statute may only be brought in federal court. Plaintiffs could have, and likely still may, include the CFAA claims in the state action. Since the CFAA claims arise from the same occurrence as the ITSA claims, the CFAA claims would likely be found to be part of the same cause of action that has already been raised in the state lawsuit. Illinois *res judicata* rules apply to claims that are part of the same cause of action if those claims could have been raised in the prior lawsuit.

*Id.* at *2. (internal citations omitted). All Thomas's claims in this case can and should be brought in the state court; they all arise from the same facts and present legal issues pending in the state court, and a state court decision would give rise to *res judicata* in the federal action.

Further, suits "need not be identical to be parallel." *Freed*, 215 F. Supp. 3d at 648 (citing *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498–99 (7th Cir. 2011) ("[F]or Colorado River purposes ... [p]recisely formal symmetry is unnecessary."); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). Notably, the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel; thus, Plaintiff's naming of Hauser Izzo as a defendant changes nothing. *AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). As the Seventh Circuit has stated: "[T]he parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action." *Clark*

8

*v. Lacy,* 376 F.3d 682, 686–87 (7th Cir.2004).

Moreover, the inclusion of Hauser Izzo as a defendant does not change the parallel nature of the suits. The *Freed* court found parallelism although the accounting firm who was a party in the federal suit was not a party in the state court suit. *Freed*, 215 F. Supp. 3d at 650. The court noted that "[o]ne way that parties in separate actions are considered substantially the same under the *Colorado River* doctrine is when they have nearly identical interests." *Id.* (internal citation omitted); see also *AAR Int'l*, 250 F.3d at 518 ("the mere presence of additional parties ... in one of the cases will not necessarily preclude a finding that they are parallel"). Hauser Izzo's interests are aligned with Jack's. Thomas's claims against Hauser Izzo also turn on the legitimacy of Thomas's eleventh-hour repudiation of the brothers' agreement to dissolve Canna and Canna. If, as the Cook County court found he is likely to do, Jack succeeds on the merits of his claim that he reasonably relied on Thomas's agreement to dissolve the Firm, Thomas cannot state a claim that Hauser Izzo aided and abetted Jack in stealing clients (Count X) or tortiously interfered with the relationship between Canna and Canna and its clients (Count IX).

In sum, the two cases are parallel. Next, the Court must consider the ten *Colorado River* factors to determine whether abstention is warranted. *Freed*, 215 F. Supp. 3d at 655.

> 2. **Nine of the Ten *Colorado River* Factors Weigh in Favor of Abstention.**

Evaluation of the factors "does not rest upon a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Rodriguez v. Ramsey*, No. 03 CV 3930, 2004 WL 2793150, at *2 (N.D. Ill. Jan. 28, 2004) (finding abstention proper where "several of these factors weigh against abstention."). In this case, each and every one of the applicable factors weighs in favor of abstention:

> 1) **whether the state has assumed jurisdiction over property;** The state court has already exercised jurisdiction over property, specifically Canna and Canna's

9

receivables and bank accounts, by directing Thomas to transfer all funds received on behalf of the Firm and Trust to the Firm's original respective bank accounts. (Ex. C, CC TRO).

2) **the inconvenience of the federal forum;** This factor is neutral, as it neither ways in favor of, nor against abstention. The parties all reside in the district and the federal and state courthouses are down the street from one another.

3) **the desirability of avoiding piecemeal litigation;** Litigating both actions would result in piecemeal litigation as both lawsuits turn on Jack's reliance on Thomas's agreement to dissolve the Firm, the legitimacy of Thomas's repudiation, and the propriety of Jack's actions in furtherance of the agreement to dissolve, "rais[ing] the prospect of inconsistent rulings." *Freed*, 215 F. Supp. 3d at 656.

4) **the order in which jurisdiction was obtained by the concurrent forums;** Jack filed the state court action before Thomas filed the federal complaint.

5) **the source of governing law, state or federal;** All of the claims, apart from the CFAA claim, are governed by Illinois state law, not federal law.

6) **the adequacy of state-court action to protect the federal plaintiff's rights;** Because concurrent jurisdiction over the CFAA claim exists, see *Liebert Corp. v. Mazur*, 2005 WL 1563202, at *3 (N.D. Ill. June 6, 2005), and all other claims are state law claims, Cook County could grant Thomas all the same relief as this Court. Indeed, the Cook County court explicitly ruled: "why should John Canna have to answer that [federal] complaint when he's the one that filed in this courtroom *and Mr. Tom Canna could have gotten the same relief that he's asking for there here? And the res judicata effect on a foreign jurisdiction. Everybody would have been bound by either one of the two courts' decisions.*" (Ex. D, TRO Tr. 14-15).

7) **the relative progress of state and federal proceedings;** The Cook County action is further along than the federal action. The state court has already denied Thomas's motion to dismiss and granted Jack's motion for temporary restraining order, finding a likelihood of success on Jack's promissory estoppel claim based on his reliance on Thomas's agreement to dissolve the firm.

8) **the presence or absence of concurrent jurisdiction;** Concurrent jurisdiction exists on the CFAA claim, and Thomas could bring it in state court, as "nothing in the CFAA's jurisdictional provision indicates that civil claims under the statute may only be brought in federal court." *Liebert,* 2004 WL 2095666 at *2.

9) **the availability of removal;** The claims in the Cook County lawsuit are non-removable as the parties are not diverse and no federal question jurisdiction otherwise exists, thus favoring abstention. *Freed*, 215 F. Supp. 3d at 657 (factor recognizes a policy against a federal court's hearing claims that are closely related to non-removable state proceedings).

10

10) **the vexatious or contrived nature of the federal claim.** Federal courts have found this factor favors abstention where, as here, Thomas could have brought every claim against both parties in the original state court proceeding. *Freed*, 215 F. Supp. 3d at 657; *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) ("we see no reason why all claims and all parties could not have been, and still could not be, part of one suit). Indeed, the Cook County court said exactly that in denying Thomas's motion to dismiss Jack's state court action. (Ex. D, TRO Tr. 14:3-8).

As the *Freed* court noted when it found the same factors weighing in favor of abstention: "that state of affairs more than suffices to support a finding that Colorado River abstention pending resolution of the state suits is warranted." *Freed*, 215 F. Supp. 3d at 658. As in *Freed*, the federal lawsuit serves as an overt attempt at maintaining redundant lawsuits in hopes of wasting resources and potentially picking between the more favorable forum. Accordingly, Defendant requests that the Court dismiss Thomas's Complaint.

### B. Even if the Court Declines Abstention, Subject Matter Jurisdiction Is Lacking Because Plaintiff Fails to State a Claim Under the CFAA.

Thomas fails to allege two essential elements of a claim under the CFAA: (1) that Jack was without authorization or exceeded authorization in accessing the computer; and (2) that he did so in furtherance of a fraudulent scheme. Thus, because the Court must dismiss the CFAA claim, the Court should not exercise supplemental jurisdiction over the rest of the state law claims and should dismiss the entire Complaint.

#### 1. The Facts as Alleged Do Not State A Claim Under the CFAA.

Section 1030(a)(4) of the CFAA requires a plaintiff to allege that defendant "(1) knowingly and with the intent to defraud, (2) accessed a protected computer, (3) without authorization or in excess of her authorization, and (4) by such conduct obtained something of value and furthered the intended fraud." *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 768 (N.D. Ill. 2009). Additionally, a violation of §1030(a)(4) also requires an allegation of either "damage" or "loss." *Lane v. Brocq*, No. 15 CV 6177, 2016 WL 1271051, at *10 (N.D. Ill. Mar. 28, 2016).

11

The CFAA defines "exceeding authorization" as "access[ing] a computer with authorization and ... us[ing] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Int'l Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418, 420 (7th Cir. 2006) (citing 18 U.S.C. §1030(a)(4)). "Without authorization" is not defined by the statute but has been defined by other courts as "conduct by outsiders who do not have permission to access the plaintiff's computer in the first place." *Dental Health Products, Inc. v. Ringo*, No. 08 CV 1039, 2009 WL 1076883, at *7 (E.D. Wis. Apr. 20, 2009). Courts in this circuit have summarized the two provisions as follows:

> "without authorization" within the meaning of the CFAA applies "to outside hackers (individuals who have no authorized access to the computer at all)," while "exceeds authorized access" under the CFAA applies "to inside hackers (individuals whose initial access to a computer is authorized but who access unauthorized information or files)."

*Epic Sys. Corp. v. Tata Consultancy Services Ltd.*, No. 14 CV 748 WMC, 2015 WL 7301245, at *4 (W.D. Wis. Nov. 18, 2015) ("In other words, obtaining information by exceeding one's authorized access is committing a form of hacking. Furthermore, courts frequently apply the CFAA to address so-called "inside hacking").

It is undisputed that at all relevant times Jack Canna was President and a 50% shareholder of Canna and Canna, a closely-held corporation, and Thomas was the other 50% shareholder. Thus, as an owner and President of the company, Jack had authority to log on to the Company's servers. Moreover, Jack's access was without limit. Indeed, Jack had authority to access and manage *any* files located on those servers. *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 947 (N.D. Cal. 2014) ("it is the owner of the protected computer that decides whether someone is authorized to access its computer's [sic] or not."). Similarly, as an owner and President, he had authority to change the passwords, as the Complaint alleges. Thus, it is factually and legally impossible for Jack to have exceeded his authority. We are not aware of any case in this Circuit

where the President or co-owner – and certainly not one who was both – was found to lack authorization to access the company's files.

Moreover, what Jack did with the computer files – be it copy them for use at his new firm *at his clients' direction* or deleting them – is ultimately irrelevant. Jack had authority to access and manage the files, especially, as here, where he accessed the files at his clients' direction and as part of the wind down of the Firm. Indeed, unlike the case of an employee exceeding his authorization by using a file for an unauthorized purpose, Jack never exceeded his authorization since, as President and co-owner of the corporation, he had authorization as a matter of law, and the Complaint has not sufficiently alleged that Jack took any action vis-à-vis the files for an unauthorized purpose.

Additionally, Thomas has failed to sufficiently allege a fraudulent scheme, much less to allege fraud with the requisite particularity. Rule 9(b) requires that "in alleging fraud…, a party must state with particularity the circumstances constituting fraud." *Motorola, Inc. v. Lemko Corp*., 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009) (J. Kennelly). Courts have held that because a Section 1030(a)(4) violation requires an allegation that the defendant of not only "fraudulent intent" but that he "furthered the intended fraud," the heightened pleading standard applies. *Id*; but *cf. Dental Health Products, Inc. v. Ringo*, 08-C-1039, 2009 WL 1076883, at *8 (E.D. Wis. Apr. 20, 2009) (holding that intent to defraud does not require pleading with particularity).

However, under either pleading standard, Thomas has failed to allege a fraudulent scheme. Indeed, the Federal Complaint is devoid of any false representations or false statements of material fact. See *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc*., 616 F. Supp. 2d 805, 826 (N.D. Ill. 2009), on reconsideration in part (May 13, 2009) (Illinois common law fraud claim requires a "false statement of material fact" that "induce[d] the plaintiff to act"). Even assuming

the allegations as true, Thomas has alleged that Jack copied server files to take with him to his new company and deleted files. There is no allegation that Jack made any false statements to Thomas about his actions related to the server or otherwise or even concealed his actions from Thomas in a deceptive manner. At most, Thomas alleges in conclusory fashion that Jack "acted in a manner that is…fraudulent." (Fed. Compl. at ¶140). Even if that were to satisfy the requirement of pleading "fraudulent intent," it utterly fails to address the existence of a fraudulent scheme.

Thus, Count VIII must be dismissed as a matter of law for failing to properly allege a violation of the CFAA under §1040(a)(4).

### 2. The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims – All of Which Plaintiff Can Bring in the Pending State Court Action.

Particularly in this case, where all the state law claims are either pending or could be brought in the parallel state court action, the Court should decline to exercise supplemental jurisdiction. While courts may exercise supplemental jurisdiction over claims based on state law, courts should also decline to exercise that jurisdiction for a number of reasons, including "if…the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. §1367(c)(4). Courts routinely decline to exercise supplemental jurisdiction in such cases. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Croplife Am., Inc. v. City of Madison*, 432 F.3d 732, 733-34 (7th Cir.2005) ("Ordinarily the district court would relinquish jurisdiction over supplemental state-law claims when as in this case all federal claims ... were dismissed before trial.); see also *W/G Kristina 123 LLC v. Melena*, No. 08 CV 3462, 2009 WL 249414, at *5 (N.D. Ill. Feb. 3, 2009) (declining supplemental jurisdiction over state law

claims when no federal claims exist).

## V. CONCLUSION

As the Circuit Court of Cook County already determined in denying Thomas Canna's motion to dismiss the state court action in favor of this federal lawsuit, the two cases are the same, and disposition of the claims one case would give rise to *res judicata* on all the claims in the other. Concurrent jurisdiction exists over Plaintiff's CFAA claim, undermining any argument that Plaintiff could not receive complete relief in the state court action, and highlighting the retaliatory and vexatious aspect of this lawsuit. There was no legitimate reason for Thomas Canna to file this case. His effort to manufacture jurisdiction through a CFAA claim utterly bereft of merit fails, and the complaint should be dismissed with prejudice.

Respectfully submitted,

*/s/ Matthew S. Ryan*
*Attorney for Defendant Jack Canna*

Matthew S. Ryan
Marty Basu
Cotsirilos, Tighe, Streicker,
     Poulos & Campbell, Ltd.
33 North Dearborn Street
Suite 600
Chicago, IL 60602
(312) 263-0345