**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS J. CANNA, individually and derivatively on behalf of CANNA & CANNA, LTD., | ) ) ) | |
| | ) | Case No. 19-cv-5555 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| JOHN F. CANNA and HAUSER, IZZO, PETRARCA, GLEASON, & STILLMAN, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Thomas Canna ("Thomas"), individually and derivatively on behalf of Canna & Canna, Ltd. ("C&C") brings suit against his brother and law partner, John Canna ("Jack") and Hauser, Izzo, Petrarca, Gleason, & Stillman, LLC ("Hauser") for alleged violations of the federal Computer Fraud and Abuse Act, 18 U.S.C.S. § 1030 *et seq.*, and various state law claims arising out of the breakup of C&C. Currently before the Court are Defendants' motions to dismiss the complaint for lack of jurisdiction and failure to state a claim, [27] and [29]. Both motions, [27] and [29], are granted in part. For the reasons that follow, the Court determines that abstention is appropriate under the *Colorado River* doctrine. These proceedings therefore are stayed pending resolution of Case Number 2019CH09429 in the Circuit Court of Cook County. The parties are instructed to provide the Circuit Court with a copy of this memorandum opinion and to file a joint status report with this Court within seven days of the Circuit Court's final disposition of Case Number 2019CH09429.

## I.      Background

Thomas and Jack are brothers and attorneys.  In 1990, they incorporated C&C, a small law firm located in Orland Park, Illinois.  Thomas and Jack were (or are) 50% shareholders of C&C pursuant to a shareholder's agreement.  Thomas and Jack are also the sole directors of the firm. Until his resignation in August 2019, Jack served as President and Treasurer of C&C.  Thomas was Vice President and Secretary and allegedly assumed the office of President following Jack's resignation.  Jack's son Patrick Canna ("Patrick") and Thomas' son Michael Canna ("Michael") became associates of C&C in 2012.  Patrick resigned from C&C on July 31, 2019.

C&C's office is located at 10703-10705 W. 159th Street in Orland Park.  Jack and Thomas are both 50% beneficiaries of a land trust ("Land Trust") that owns the property.  They receive rental income from renting out part of the property to a third-party tenant.  The income is held in an account at Fifth Third Bank ("Rental Account").

In 2018, as in earlier years, Jack expressed an interest in retiring from the practice of law. In May 2018, Thomas suggested that C&C merge with another "school law firm," like Hauser, so Jack could obtain money for retirement.  On May 25 of that year, Jack, Thomas, and the eight controlling members of Hauser signed a confidentiality and non-disclosure agreement ("Confidentiality Agreement").  On May 31, Thomas and Michael met with Jack Izzo, Ray Hauser, and several other members of Hauser to discuss a possible merger.  Thomas and Michael provided the Hauser attorneys with copies of C&C's confidential financial and client records, including a complete list of its public clients (school districts, library municipalities, etc.) and a complete summary of billing for those clients.  Ultimately, the parties were unable to agree to terms for a merger.  Merger negotiations ended March 4, 2019.  Hauser promised to return information that was provided pursuant to the Confidentiality Agreement, but never did.

The complaint alleges on information and belief that after merger negotiations ended unsuccessfully, Jack—while still an officer and shareholder of C&C—continued to communicate and negotiate an agreement with Hauser about joining the firm in an "of counsel" role or some other capacity, in exchange for encouraging existing C&C clients to follow him to Hauser. Jack allegedly concealed these discussions from Thomas and began to inform existing clients of C&C of his intention to join Hauser and to encourage them to leave C&C and retain Hauser for legal services.

On July 8, 2019, Jack notified Thomas that he had filed documents with the Illinois Secretary of State to dissolve C&C, without Thomas' knowledge or approval. According to the complaint, the documents Thomas filed falsely represented that the dissolution was approved by consent of all the shareholders entitled to vote on dissolution. On July 15, 2019, the Secretary of State's office returned the documents Jack submitted, "after refusing to file them because they could not be filed based upon the information that he included in his submittals." [1] at 11. C&C continues to be an "active" Illinois corporation.

Jack's final day at C&C before joining Hauser was July 31, 2019. According to the complaint, Jack took numerous unauthorized actions in his final days at Hauser to prevent C&C from continuing to operate and compete with Hauser, including terminating almost all of C&C's employees, including Thomas' son; removing Thomas as a signer from C&C's checking and savings accounts, thus preventing him from processing payroll for the remaining staff; stopping payment on C&C's pending checks; discontinuing C&C's Westlaw service; cancelling health and Life insurance policies for C&C employees; removing office furniture, file cabinets, and other items owned by C&C; boxing up and removing client files; deleting certain files from C&C's

server; and disabling C&C's website; and withdrawing the balance of the Rental Account.  As a result of Jack's actions, C&C is unable to effectively service its clients.

Jack also allegedly hired a computer consultant, without Thomas' knowledge, to "(1) use the current main password (known to all C&C employees) to access the C&C computer server which holds all of C&C's digital files to change that main password for the server (the main password allows direct access to the physical server box in the server room to make administrative changes) which password Jack still refuses to share with Thomas or other C&C employees; (2) change Thomas' personal password that allows Thomas access to the C&C server (from both his office desktop computer and for remote access) which access Jack has never restored; (3) temporarily change Michael's personal password that allows him access to the server (from both his office desktop computer and for remote access)— an action which he undid on July 26, 2019 upon Thomas' confrontation; (4) disconnect[] Thomas' and Michael's access to the full intra-office network which he has never restored; (5) cut off all employee access to the C&C scanner; and, upon information and belief, (6) remove and/or copy files from the C&C computer server for use at his new competing law firm, [Hauser]; and (7) take other undiscovered or unknown action affecting the C&C computer network, computers, and server."  [1] at 14.

Jack refused to give Thomas the new passwords.  Thomas' access to C&C's files and computer equipment has not been restored.  On August 1, 2019, Thomas served on Jack a request to examine C&C's corporate records.  Jack refused the request and has allegedly continued to refuse to provide the requested records.

Based on these facts, Thomas brings eleven causes of action against Jack and/or Hauser. The only federal claim is for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ("CFAA").  Thomas also asserts Illinois state law claims for breach of fiduciary duty,

conversion, unjust enrichment, shareholder remedies under 805 ILCS 5/12.56, tortious interference, and breach of confidentiality and non-disclosure agreement. Currently before the Court are Defendants' motions to dismiss the complaint for lack of jurisdiction and failure to state a claim.

## II.     Legal Standard

Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' *Colorado River* abstention argument, which the Court finds dispositive, is raised pursuant to 12(b)(1). Under 12(b)(1), the Court must accept all well-pleaded facts as true and draw reasonable inferences in favor of the plaintiff. See *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Delaney v. Specialized Loan Servicing, LLC*, 2015 WL 7776902, at *5 (N.D. Ill. Dec. 3, 2015). In addition, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. Jack's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). The party seeking jurisdiction bears the burden of proving that jurisdiction is satisfied. See *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009); *Nieves v. Bank of America, N.A.*, 2015 WL 753977, at *3 (N.D. Ill. Feb. 20, 2015).

## III.     Analysis

Thomas does not mention in his thirty-five-page complaint that he and Jack are already parties to another lawsuit concerning Jack's attempt to close C&C's operations. Jack filed that declaratory action in the Cook County Circuit Court two days before Thomas filed this federal

5

action. Based on the pendency of that state court proceeding, both Defendants ask the Court to dismiss this action pursuant to the *Colorado River* doctrine.

The federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *AXA Corp. Sols. V. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003). Nonetheless, even where jurisdiction is present, the *Colorado River* abstention doctrine allows a federal court to "stay or dismiss a suit … when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. JPMorgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)). The *Colorado River* analysis proceeds in two steps. First, the Court must determine whether the state and federal actions are parallel. See *Freed*, 756 F.3d at 1018. "[F]or *Colorado River* purposes ... [p]recisely formal symmetry" between the state and federal suits "is unnecessary" to find parallelism. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011). Rather, suits are parallel where "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Freed*, 756 F.3d at 1019 (internal quotation marks omitted). In other words, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted). "Any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *Adkins*, 644 F.3d at 499 (internal quotation marks omitted).

If, and only if, the Court determines that the state and federal suits are parallel, it moves on to examine and balance the following ten non-exclusive factors to determine whether abstention is warranted:

1) whether the state has assumed jurisdiction over property;

2) the inconvenience of the federal forum;

3) the desirability of avoiding piecemeal litigation;

4) the order in which jurisdiction was obtained by the concurrent forums;

5) the source of governing law, state or federal;

6) the adequacy of the state court action to protect the federal plaintiff's rights;

7) the relative progress of state and federal proceedings;

8) the presence or absence of concurrent jurisdiction;

9) the availability of removal; and

10) the vexatious or contrived nature of the federal claims.

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818-19.

The Court first considers whether the Cook County action and this suit are sufficiently parallel to warrant abstention under *Colorado River*. Jack has provided the Court with information and documents concerning the state court proceeding, which the Court can consider for purposes of Defendants' 12(b)(1) motion. Jack filed his declaratory action on August 15, 2019, along with an emergency motion for a temporary restraining order ("TRO"), seeking (1) a declaration that Thomas agreed to dissolve the law firm, (2) judicial dissolution, and (3) an injunction prohibiting Thomas from depleting the firm's assets and taking other unilateral actions purportedly on behalf of the dissolved firm. More particularly, Jack alleges in his complaint that Thomas demanded dissolution of C&C in March 2019 and in April 2019 agreed to dissolve the firm on July 31, 2019 and vacate and sell the Land Trust properties. Jack further alleges that Thomas took several steps

to wind down C&C, including: (1) informing staff of the dissolution; (2) drafting a dissolution memo; (3) informing the administrator of the Firm's 401(k) plan that the firm was dissolving; and (4) hiring outside counsel to effectuate a speedier dissolution. Thomas also allegedly prepared to start a new firm with his son by applying for malpractice insurance and informing Jack that he was going to sign a lease for his new firm's office space.

According to Jack, he acted in reliance on Thomas' agreement to dissolve the firm when he agreed to join Hauser as "of counsel." However, on June 17, 2019, Thomas allegedly unilaterally repudiated his agreement to the dissolution. Jack believed that the repudiation came too late and continued to take steps consistent with dissolution, including transitioning his clients and transferring their files (per the clients' directions) to Hauser. Jack also alleges that Thomas improperly purported to usurp the role of President of C&C and informed the one remaining staff member that he would continue the firm indefinitely and continue to pay himself and his son with the firm's funds. Jack further alleges that Thomas improperly opened a bank account in C&C's name; falsely identified himself to C&C's clients as President of C&C and directed they send payments directly to him for deposit in his bank account; mispresented that Jack still worked for C&C; and falsely implied that Jack had engaged in misconduct related to C&C's bank accounts and funds.

On August 29, 2019, the Cook County Circuit Court entered a TRO against Thomas. That order remains effective. At some point, the brothers agreed to mediate, but Thomas allegedly reneged on that agreement. Jack subsequently amended his complaint in the Cook County action, adding counts for breach of contract, tortious interference with economic advantage, defamation per se, and violation of the Illinois Right of Publicity Act.

Defendants convincingly argue that the state court suit and this case are parallel because the primary factual and legal issues raised in the state court action are the same as those raised in Thomas's federal action: namely whether Thomas agreed to dissolve Hauser; if so, whether his attempt to repudiate that agreement was effective; the contours of Jack's fiduciary duties to C&C and Thomas; and whether Jack breached any of his duties in taking the various actions he took trying to shut down C&C's operations. These issues are implicated in Plaintiff's state law claims, as well as his CFAA claim. For instance, Thomas' CFAA claim is premised on a theory that Jack was in breach of his fiduciary duties at the time he accessed C&C's computer equipment and files, and therefore was not an authorized user for purposes of CFAA liability. See [31] at 7.

Tellingly, in the Circuit Court, Thomas moved to dismiss Jack's first-filed complaint on the basis that all of the claims should proceed in federal court instead. Thomas reasoned that although the two cases were factually identical, only the federal courts could exercise jurisdiction over the CFAA claim (an argument the Court finds unconvincing, for reasons explained below). Thomas argued at the hearing on the motion to dismiss: "It's all the same operative facts. It's the same thing. It's two brothers fighting each other over the business." [32] at 3. Thomas also acknowledged the inefficiency of proceeding in two forums, asserting that "[w]e're going to end up with double depositions, double discovery, double everything." *Id.* Thomas' position in the state court proceeding undercuts his claim that the background facts of the two cases are "almost unrelated." [31] at 13.

Further, Thomas fails to acknowledge the point made by Defendants and the Circuit Court that Thomas' claims here may be barred by *res judicata* when the Cook County action concludes. See *Freed*, 215 F. Supp. 3d at 650 ("[p]rinciples of *res judicata* provide another lens" to analyze whether state and federal suits are parallel). Defendants contend that adjudication of the claims in

9

the Cook County lawsuit would dispose of all the claims presented in this lawsuit, because "a finding in the Cook County action that Jack properly relied on Thomas's agreement to dissolve despite his eleventh-hour change-of-heart—the exact basis for Jack's promissory estoppel claim— would give Jack a complete *res judicata* defense to nearly all claims." [30] at 7. In granting Jack's motion for a TRO, the Circuit Court found a likelihood of success on Jack's promissory estoppel claim. And in denying Thomas's motion to dismiss, the Circuit Court also pointed out the *res judicata* problem, noting that "[e]verybody would [be] bound by either one of the courts' decisions." *Id.*

The Court agrees that if Thomas chooses not to assert his claims as counterclaims in the state court action, the court's decision could be *res judicata* in this action—an issue that Jack discusses but Thomas does not mention in his brief. In Illinois, "the defense of *res judicata* or claim preclusion requires proof of three elements: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020) (quoting *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204 (Ill. Sup. 1996). The defense precludes relitigation of not only matters that were actually decided in the original action, but also matters that could have been decided in that action. *Id.* Illinois uses a "transactional analysis" to determine whether two suits involve identical causes of action. *Squires-Cannon v. Forest Preserve District of Cook County*, 897 F.3d 797, 804 n.4 (7th Cir. 2018). "[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. Sup. 1998).

10

As explained above, all of Plaintiff's claims arise from a single group of operative facts concerning Jack's attempts to shut down C&C. The Court is aware of no reason why Plaintiff could not bring those claims as counterclaims in the state court action. The Circuit Court stated as much. See [30] at 7 ("There's absolutely no reason, none whatsoever, that all of the counts that Mr. Tom Canna had filed in federal court could not have been a counterclaim in this courtroom as well as an answer to the complaint or a third-party complaint as it relates to the law firm."); see also *Liebert Corp. v. Mazur*, 2004 WL 2095666, at *2 (N.D. Ill. Sept. 17, 2004) (abstaining under *Colorado River* where plaintiff could have brought all claims, including CFAA claims, in parallel state court action, and explaining that "resolution of the state law case would likely dispose of the CFAA claims as well because of Illinois law as to *res judicata* and claim splitting").

Notably, even "Thomas agrees the two cases ought be together," but maintains that "they can only proceed together in this Court which has exclusive jurisdiction over the [CFFA] claim." [31] at 1. Plaintiff cites *Prominent Consulting LLC v. Allen Bros*., 543 F. Supp. 2d 877 (N.D. Ill. 2008), in support. But in that case, the court recognized that federal courts have exclusive jurisdiction over *copyright* claims, not CFAA claims. See *id.* at 879. While the plaintiff in that case also had a CFAA claim, the court did not address whether federal courts have exclusive jurisdiction over CFAA claims because the parties "treated the CFAA claim … as an afterthought, both with respect to the *Colorado River* and the subject matter jurisdiction briefing." *Id*. at 884, n.6.

Apart from citing *Prominent*, Plaintiff also appears to presume that state courts cannot exercise concurrent jurisdiction over CFAA claims because "nothing in 18 U.S.C. § 1030(g) indicates that claims under the statute may be brought in state court." [31] at 13. However, Plaintiff's argument flips the exclusive jurisdiction analysis on its head. As the Supreme Court

recently emphasized, there is a "'deeply rooted presumption in favor of *concurrent* state court jurisdiction' over federal claims." *Atlantic Richfield Co. v. Christian*, 140 S. Ct. 1335, 1351 (U.S. 2020) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458–459 (1990)) (emphasis added). "Only an 'explicit statutory directive,' an 'unmistakable implication from legislative history,' or 'a clear incompatibility between state-court jurisdiction and federal interests' can displace this presumption." *Id.* (quoting *Tafflin*, 493 U.S. at 460). As Plaintiff acknowledges, the statutory language of CFAA does not evidence an intent to divest the state courts of concurrent jurisdiction. Plaintiff also does not identify, and the Court is not aware, of anything in the legislative history of the CFAA that evidences such an intent. And Plaintiff does not suggest that there is anything incompatible between state-court jurisdiction and federal interests.

Therefore, the Court must presume that the federal courts do not have exclusive jurisdiction over CFAA claims. This appears to have been the approach taken in all of the federal cases the Court could locate addressing this issue. See *Liebert*, 2004 WL 2095666, at *2 ("Nothing in the CFAA's jurisdictional provision indicates that civil claims under the statute may only be brought in federal court. Plaintiffs could have, and likely still may, include the CFAA claims in the state action." (internal citation omitted)); see also *H & R Block Tax Services, Inc. v. Rivera-Alicea*, 570 F. Supp. 2d 255, 269 n.5 (D. Puerto Rico 2008) ("This Court does not have exclusive jurisdiction over Block's CFAA claim."); *1-800 Remodel, Inc. v. Bodor*, 2019 WL 856399, at *2 n.3 (C.D. Cal. Jan. 28, 2019) ("there is no indication that federal courts have *exclusive* jurisdiction over … CFAA claims"); *Orthopaedic & Spine Center, LLC v. Henry*, 2017 WL 6035234, at *6 (S.D. Ohio Dec. 6, 2017) (plaintiff's claim "for violation of the federal CFAA[] may … be litigated in state court" (citing *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78 (1981))); *Cognate Bioservices, Inc. v. Smith*, 2016 WL 915506, at *8 n.12 (D. Md.

12

Mar. 10, 2016) ("This court has found no Fourth Circuit case law on the issue, but courts in other circuits have concluded that the CFAA creates concurrent jurisdiction.").

Plaintiff also makes a passing argument that the state and federal lawsuits are not parallel because the cases involve different parties, as Hauser is a party only in the federal action. However, "the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *AAR Intern., Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). "One way that parties in separate actions are considered substantially the same under the *Colorado River* doctrine is when they have 'nearly identical' interests." *Freed*, 756 F.3d at 1019 (quoting *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc*., 962 F.2d 698, 700 (7th Cir. 1992)). Plaintiff does not dispute that the two Defendants' interests satisfy this standard: Thomas's claims against Hauser also turn on the legitimacy of Thomas' repudiation of the brothers' agreement to dissolve C&C. Defendants explains that if the Cook County Circuit Court ultimately determines (as it did at the TRO stage) that Jack reasonably relied on Thomas's agreement to dissolve C&C, Thomas cannot state a claim that Hauser aided and abetted Jack in stealing clients (Count X) or tortiously interfered with the relationship between C&C and its clients (Count IX).

For these reasons, the Court finds that the Cook County action and this suit are parallel for purposes of the *Colorado River* doctrine. The Court therefore turns to the ten balancing factors, which Thomas largely does not address in his response brief. The Court agrees with Defendants that all of the factors either weigh in favor of abstention or are neutral:

1) The Circuit Court has already exercised jurisdiction over C&C's property—its receivables and bank accounts—by directing Thomas to transfer all funds received on behalf of C&C and the Land Trust to C&C's original bank accounts.

2) The state and federal forums are equally convenient and located within blocks of one another.

13

3) Litigating both actions would result in piecemeal litigation as both lawsuits turn on Jack's reliance on Thomas's agreement to dissolve C&C, the legitimacy of Thomas's repudiation, and the propriety of Jack's actions in furtherance of the agreement to dissolve, "rais[ing] the prospect of inconsistent rulings." *Freed*, 215 F. Supp. 3d at 656.

4) The Circuit Court obtained jurisdiction before this Court.

5) All of the claims other than the CFAA claim are governed by Illinois state law rather than federal law.

6) The Circuit Court is an adequate forum to protect Thomas' rights; it could grant the same relief as this Court.

7) The Cook County action has progressed further than this case. The state court has already denied Thomas's motion to dismiss and granted Jack's motion for a TRO, finding a likelihood of success on Jack's promissory estoppel claim based on his reliance on Thomas's agreement to dissolve the firm.

8) The Circuit Court has concurrent jurisdiction over all of Robert's claims, as explained above.

9) The claims in the Cook County lawsuit are nonremovable as the parties are not diverse and no federal question jurisdiction otherwise exists, thus favoring abstention. *Freed*, 215 F. Supp. 3d at 657.

10) Robert's decision to file an action in federal court two days after Jack filed suit in state court, even though Robert could have brought his claims as counterclaims, weighs in favor of abstention. See *Freed*, 215 F. Supp. 3d at 657; *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) ("we see no reason why all claims and all parties could not have been, and still could not be, part of one suit").

In sum, the Court finds that the Cook County action and this action are parallel and the balance of *Colorado River* factors weighs heavily in favor of abstention. Therefore, the Court concludes that abstention under *Colorado River* is appropriate.

The final issue that must be addressed is whether this case should be dismissed or simply stayed pending the outcome of the parallel Cook County action. The parties do not brief this issue. Although "[t]he Supreme Court left both dismissal and a stay as options where the Court determines that the *Colorado River* doctrine applies," *Delaney*, 2015 WL 7776902, at *5, the

14

Seventh Circuit has "held that a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine." *LaDuke v. Burlington Northern R. Co*., 879 F.2d 1556, 1561–62 (7th Cir. 1989). This "allows the federal court to retain jurisdiction over the federal action in case the state litigation "washes out" for some reason and fails to reach its anticipated end of a final decision on the merits." *Id.* at 1562; see also *Delaney*, 2015 WL 7776902, at *5. Given the clear direction of the Seventh Circuit, the Court will stay this action pending resolution of the Cook County lawsuit, rather than dismiss it.

## IV.    Conclusion

For these reasons, Defendants' motions to dismiss, [27] and [29], are both granted in part. Abstention is appropriate under the *Colorado River* doctrine. These proceedings therefore are stayed pending resolution of Case Number 2019CH09429 in the Circuit Court of Cook County. The parties are instructed to provide the Circuit Court with a copy of this memorandum opinion and to file a joint status report with this Court within seven days of the Circuit Court's final disposition of Case Number 2019CH09429.

Dated: September 21, 2020

Robert M. Dow, Jr.
United States District Judge